# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Sherrie Stevens,

    Plaintiff

v.

Romeo Aranas, et al.,

    Defendants

Case No.: 2:15-cv-01002-JAD-NJK

**Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion for Injunctive Relief**

[ECF Nos. 66, 87]

    Plaintiff Sherrie Stevens sues various Nevada Department of Corrections (NDOC) officials and the State of Nevada for allegedly exhibiting deliberate indifference to her serious medical needs and violating the Americans with Disabilities Act (ADA) during her incarceration at the Florence McClure Women's Correctional Center (FMWCC). All defendants move for summary judgment.[1] Stevens does not oppose judgment for Defendants Reynoso, Parkins, Wilcox, Clark, Faulkner, Cox, and Hill because they did not directly participate in the alleged violations, so I grant judgment in their favor. I also grant judgment in favor of defendants Aranas and Sanchez because Stevens has failed to show any genuine disputes of material fact that preclude me from doing so. I grant judgment in favor of the State of Nevada because it cannot be held liable for violations under § 1983 and because Stevens does not demonstrate an ADA violation. And because my summary-judgment conclusions eliminate Stevens's ability to prevail on the merits of her claims, I deny her recently filed motion for preliminary injunction.

## Background

    Stevens was in and out of custody at the Colorado Department of Corrections (CDOC) between 2000 and 2011 before she entered NDOC's custody in 2013.[2] While in CDOC's custody, Stevens was treated for various medical conditions. In December 2010, she informed

---

[1] ECF No. 66.

[2] See ECF No. 85 (CDOC medical records).

1

CDOC that she had been diagnosed with Regional Sympathetic Distrophy (RSD)[3]—a rare disorder of the nervous system.[4] Based on Stevens's self-reported diagnosis, CDOC Dr. Julie Thistlewaite included the RSD diagnostic code in her assessment and began treating Stevens for the condition.[5] Months later, another CDOC official thoroughly reviewed all of Stevens's medical records and found no formal RSD diagnosis.[6] From that point on, doctors opined that Stevens suffered from "injury unspecified nerve shoulder up limb," "other epilepsy and recurring seizures," "unspecified essential hyper tension," and "pain in joint, upper arm."[7]

While at CDOC, Stevens was prescribed various medications to control her symptoms, including Gabapentin (also known as Neurontin), a nerve pain and anti-convulsant medication;[8] Tramadol, a narcotic for pain relief; and Flexeril, a muscle relaxant.[9] After Stevens was released from CDOC, she was evaluated by Stout Street Clinic, a nonprofit organization serving Colorado's homeless community.[10] Stout Street assessed Stevens with "unspecified idiopathic peripheral neuropathy."[11]

Stevens was transferred to FMWCC from the Clark County Detention Center (CCDC) on December 10, 2013.[12] Dr. Sanchez evaluated Stevens during NDOC intake a few days later.[13]

---

[3] ECF No. 85 at 97. The modern name for RSD is Chronic Regional Pain Syndrome (CRPS). To stay consistent with the record, I refer to the condition as RSD.

[4] ECF No. 71 at 2 (Aranas declaration).

[5] ECF No. 85 at 97–103.

[6] *Id.* at 127.

[7] *See generally* ECF No. 85.

[8] According to Stevens's exhibits, Gabapentin can be effective to treat RSD symptoms. ECF No. 81-1 at 5.

[9] *See generally* ECF No. 68 at 3–35 (NDOC physician orders).

[10] *Id.* at 119 (Stout Street records).

[11] *Id.*

[12] ECF No. 68 at 3.

[13] *Id.*

Stevens told Sanchez that she suffered from seizures and had been diagnosed with RSD.[14] At that time, Sanchez had access to only partial medical records from CCDC.[15] Sanchez and NDOC officials reviewed those records and determined that there were no medications prescribed for RSD treatment and found no RSD diagnosis.[16] Sanchez prescribed Stevens Gabapentin and Phenobarbital, a seizure medication.[17] He did not prescribe any additional pain medications.[18] At various times throughout the next few years, Stevens was prescribed Flexeril and Naproxen, a pain reliever better known as Aleve.[19]

Based on Stevens's history of seizures, NDOC enrolled her in the neurological chronic-care clinic to monitor her seizure disorder.[20] She was seen for regular monitoring seven times between January 2014 and August 2015.[21] On April 9, 2014, Stevens suffered from a series of seizures.[22] NDOC physician orders indicate that on April 10, 2014, NDOC attempted to retrieve Stevens's Stout Street Clinic records.[23] However, Stevens had not signed the required HIPAA release form allowing NDOC to obtain the records. In May, Nurse Beebe Clark responded to one of Stevens's informal grievances regarding her treatment, noting that she had failed to sign a HIPAA release for her records.[24] A month later, Stevens signed a release for Stout Street Clinic

---

[14] ECF No. 70 at 2.

[15] *Id.*

[16] *Id.*

[17] *Id.*; ECF No. 68 at 3.

[18] *See* ECF No. 68 at 3.

[19] *See generally* ECF No. 68 at 3–35.

[20] *See* ECF No. 71 at 4.

[21] *See generally* ECF No. 68 at 34–47 (NDOC chronic-care clinic records).

[22] *Id.* at 7.

[23] *Id.*

[24] ECF No. 72 at 3.

records.[25]  Three months after that, she signed releases for her CDOC and CCDC records.[26]  And by December 2014, all of Stevens's records had been received by NDOC.[27]

Dr. Aranas examined Stevens on September 24, 2015, and referred her to the Utilization Review Panel (URP) for a neurological consultation regarding her "seizure [disorder] vs. pseudoseizures and RSD."[28]  Dr. Yu, an outside neurologist, examined Stevens in March 2016.  Dr. Yu's report assessed Stevens with a seizure disorder and "pain in unspecified limb."[29]  He noted a "patient diagnosis of RSD on the left upper extremity in 2006 in Colorado" but found that the Electromyogram (EMG) and nerve-conduction study he conducted were "negative for cervical radiculopathy except for mild bilateral carpal tunnel syndrome."[30]  He ordered x-rays of her left arm, continuation of Gabapentin, discontinuation of Naproxen, and prescribed Tramadol and Flexeril.[31]  He also noted that he wanted all of Stevens's medical records from Colorado, and recommended that she be referred to an orthopedic specialist because the nerve studies did not explain her pain.[32]  NDOC never gave Dr. Yu the records and did not refer Stevens to an orthopedic doctor.[33]  It also informed Dr. Yu that Stevens could not have Tramadol because it is

---

[25] ECF No. 68 at 101.

[26] *Id.* at 102, 104.

[27] ECF No. 71 at 4.

[28] ECF No. 81-7 at 18.  Stevens contends that the referral was only for her seizures, not for an RSD evaluation.  That contention is not supported by the record.  Dr. Yu considered Stevens's self-reported RSD diagnosis and conducted nerve studies to evaluate her claim, but ultimately did not assess her with that disorder.  *See* ECF No. 82-11.

[29] ECF No. 82-11 at 9.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] ECF No. 81-2 at 4.

4

a controlled substance.[34] Dr. Yu confirmed that is was acceptable to continue prescribing Naproxen and Flexeril instead.[35]

In July 2016, NDOC referred Stevens to a second neurologist, Dr. Hyson, to obtain a second opinion regarding her seizures and RSD.[36] Hyson concluded that Stevens had a seizure disorder but made no assessments about RSD.[37] He recommended that she continue her current medications.[38]

Throughout her incarceration at FMWCC, Stevens worked as a unit porter from March 26, 2014, through June 2, 2014; and as a mental-health porter from June 2, 2014, through October 7, 2016.[39] She was removed from her position due to unrelated disciplinary charges.[40] As a mental-health porter, Stevens was required to sweep, mop, dust, and take out the trash on a daily basis.[41] She also stripped and waxed the floors and utilized an industrial floor buffer regularly.[42] As a unit porter, she had similar duties, although she was not required to wax or buff floors.[43]

Stevens brings three claims: (1) deliberate indifference to her serious medical needs in violation of the Eighth Amendment under § 1983, (2) failure to hire, train, and supervise staff under § 1983; and (3) violating the ADA.[44] Because Nevada is immune from § 1983 liability

---

[34] ECF No. 82-11 at 3.

[35] *Id.* at 4.

[36] ECF No. 68 at 70.

[37] *Id.* at 71–72.

[38] *Id.*

[39] *Id*. at 122.

[40] ECF No. 73 at 2.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] ECF. No. 24.

5

under the Eleventh Amendment, I assume that Stevens's § 1983 claims are directed only toward the individual defendants, and that is how I interpret them.[45]

## Discussion

### A. Summary-judgment standard

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[46] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[47] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[48]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[49] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; she "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in her favor.[50]

### B. Deliberate-indifference

A prisoner who claims inadequate medical care must show that prison officials were deliberately indifferent to her serious medical needs.[51] A plaintiff can prevail on a deliberate-

---

[45] *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citing *Quern v. Jordan*, 440 U.S. 332 (1979)).

[46] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[47] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[48] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[49] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[50] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[51] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

indifference claim if she can show that prison officials denied, delayed, or intentionally interfered with medical treatment and that the delay or interference caused further injury.[52] Indifference to a prisoner's medical needs must be substantial; mere indifference, negligence, medical malpractice, or even gross negligence are insufficient to establish deliberate indifference.[53] A mere difference of medical opinion likewise does not suffice;[54] a prisoner must instead show that the course of treatment chosen was medically unacceptable under the circumstances and taken in conscious disregard to her health.[55]

Stevens contends that she was diagnosed with RSD at CDOC, and that NDOC's failure to accept that diagnosis and treat it accordingly amounts to deliberate indifference. A thorough review of the records, however, indicates that no formal, objective RSD diagnosis was ever made. While Dr. Thistlewaite acknowledged an RSD assessment multiple times in 2011, other doctors disagreed with that assessment, and instead diagnosed her with "injury unspecified nerve shoulder up [l]imb," "other epilepsy and recurring seizures," "unspecified essential hypertension," and "pain in joint, upper arm" to describe Stevens's pain. The NDOC doctors did not violate Stevens's rights by refusing to acknowledge her self-reported diagnosis and subjective reports of pain without any objective medical indicators supporting them. NDOC officials determined that the majority of evaluations and assessments from NDOC, CDOC, and outside specialists, as well as her inmate work history, did not objectively support an RSD diagnosis. That determination does not amount to deliberate indifference.

Stevens also argues that NDOC's refusal to prescribe Tramadol was deliberately indifferent. But a doctor is not required to provide the particular drugs that a prisoner prefers.[56] NDOC officials merely expressed a difference of opinion about which medications were

---

[52] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

[53] *Conn v. City of Reno*, 591 F.3d 1081–82 (9th Cir. 2009).

[54] *See Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

[55] *See Toguchi v. Chung*, 291 F.3d 1051, 1058 (9th Cir. 2004).

[56] *Id.*

7

necessary to treat Stevens's objective diagnoses and control her pain. And while Dr. Yu prescribed Tramadol in 2016, he also told prison officials that prescribing Naproxen and Flexeril instead was an acceptable alternative. Stevens has not shown that NDOC's decision not to prescribe Tramadol was medically unacceptable under the circumstances.

Finally, Stevens contends that Drs. Aranas and Sanchez were deliberately indifferent for failing to obtain her medical records from CDOC, CCDC, and Stout Street Clinic earlier. She contends that the defendants failed to follow their own policy "to obtain as much medical history in depth as quickly as possible."[57] NDOC responds that officials do not commonly request medical records from all prisoners immediately upon intake. Rather, they request releases when medical officials have concerns or when an inmate exhibits questionable symptoms.[58] At intake, Stevens's subjective reports and self-diagnoses did not prompt NDOC officials to believe that they needed full medical records. But what they did know at intake was apparently enough to enroll Stevens in a chronic-care clinic and regularly monitor her seizure activity.

It is entirely possible that the more prudent course of action would have been to try and obtain Stevens's records earlier. But Stevens has not shown that failing to do so was substantial enough to constitute deliberate indifference. Nor has she shown that the failure to obtain her complete medical history caused further injury. When NDOC did obtain all of her records, officials determined that they did not support her self-reported RSD diagnosis, and they continued to treat her in the same manner. Dr. Aranas testified at his deposition that even if Stevens were to be diagnosed with RSD, she would likely be receiving the same combination of medications that she is now.[59] As discussed above, that decision does not amount to deliberate indifference. So, I grant judgment in favor of Drs. Aranas and Sanchez on this claim.

---

[57] ECF No.79 at 8; *see also* ECF 81-3 at 53–54 (Faulkner deposition).

[58] ECF No. 72 at 3.

[59] *See* ECF No. 71 at 4; ECF No. 81-6 at 46–47.

**D.     Failure-to-hire/train/supervise**

Stevens also contends that Drs. Aranas and Sanchez violated § 1983 by failing to employ, train, and supervise their employees to "respond to [her] requests for medical help."[60] The record reflects that Drs. Sanchez and Aranas were the only NDOC personnel to have provided the treatment at issue. Therefore, there is no subordinate action that either defendant could be held liable for. I thus grant summary judgment in their favor on this claim.[61]

**C.     ADA**

To establish a claim under the ADA, a plaintiff must show that (1) she has a disability; (2) she is "otherwise qualified to participate or receive the benefit of some public entity's services, programs, or activities";[62] (3) she was excluded from that participation or denied benefits; and (4) such exclusion or denial was by reason of her disability.[63] It appears that Stevens brings this claim against the State of Nevada.

As discussed above, the parties dispute whether Stevens has a disability because the records do not demonstrate an objective RSD diagnosis. Even assuming that Stevens does have a disability, she has not alleged what service, program, or benefit she was otherwise qualified to participate in, but was excluded from because of her RSD. Rather, she argues that the denial of medical treatment for her disability is itself an ADA violation.

"Key elements of an ADA . . . claim cannot be reconciled with medical treatment decisions for the underlying disability."[64] Stevens would not be "otherwise qualified" for RSD treatment if she did not have RSD. There is also no indication that she was denied treatment for

---

[60] ECF No. 24 at 10.

[61] Because I find that Aranas and Sanchez committed no constitutional violations, I decline to address their qualified-immunity defense.

[62] *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam).

[63] *See McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).

[64] *O'Guinn v. Nev. Dep't of Corr.*, 468 F. App'z 651, 653 (9th Cir. 2012) (citing *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1022 (9th Cir. 2010)).

9

her RSD *because of* her RSD. Therefore, Stevens cannot satisfy the second or fourth elements of her ADA claim. I grant summary judgment in favor of the State on this claim.[65]

E.  **Non-participation of other defendants**

Liability under § 1983 arises only upon personal participation by the defendant.[66] The parties agree that the crux of this litigation concerns Stevens's medical treatment and diagnosis, in which only defendants Aranas and Sanchez were directly involved. The record does not reflect that defendants Reynoso, Parkins, Wilcox, Clark, Faulkner, Cox, or Hill provided or denied Stevens any medical treatment at all. I therefore grant summary judgment in their favor.[67]

F.  **Stevens's motion for injunctive relief**

On February 18, 2016, Stevens filed a motion for injunctive relief "with respect to her diagnosis and treatment of her neurological condition known as RSD."[68] To prevail on a motion for injunctive relief, the plaintiff must show a likelihood of prevailing on the merits.[69] Because I have now granted summary judgment in the defendants' favor on all of Stevens's claims, she cannot demonstrate a likelihood of prevailing on the merits of any of them. So, I deny this motion.

. . .

---

[65] Because an ADA claim cannot be pled on these facts, I do not reach Nevada's sovereign-immunity argument.

[66] *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979).

[67] Stevens wishes to substitute current NDOC Director James Dzurenda with former Director Cox for purposes of injunctive relief. ECF No. 79 at 10. Because this case has been resolved in its entirety in favor of the defendants, and I deny the motion for injunctive relief, I decline the request for substitution.

[68] ECF No. 87 at 2.

[69] *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Stevens's motion for injunctive relief **[ECF No. 87] is DENIED.**

IT IS FURTHER ORDERD that the defendants' motion for summary judgment **[ECF No. 66] is GRANTED.** The **Clerk of Court** is directed to **ENTER JUDGMENT in the defendants' favor and CLOSE THIS CASE.**

Dated: February 23, 2018

_____
U.S. District Judge Jennifer A. Dorsey